In the second case this morning, Gordon v. Heath, Ms. Patterson? Good morning, and may it please the Court. My name is Sydney Patterson, and I represent the appellant, Maryland State Trooper Sergeant William Heath. In this case, the Court is asked to decide whether Sergeant Heath is entitled to qualified immunity. I think, at least for me, maybe you could speak into the microphone more or speak up. Is this better? A little. All right. Sorry. Go ahead. Thank you. The Court is asked to decide in this case whether Sergeant Heath is entitled to qualified immunity as to the appellee's hostile work environment claim, which is asserted under Section 1981 in Count 5 of the amended complaint. The District Court found that appellees narrowly stated a plausible claim for hostile work environment based on their allegation that their supervisor, Corporal Oros, sent a single racially offensive text to a group of task force members in their work group chat. The offensive text is the only well-pled allegation of racially discriminatory conduct in the complaint. The remaining allegations in the complaint, which asserted that appellees were excluded from certain informal meetings and group chats, are unsupported by any factual allegations. They simply state that they were excluded based on their race. An appellant was the supervisor of this task force, correct? Sergeant Heath and Corporal Oros are both alleged to be supervisors in the amended complaint of the task force. What did Sergeant Heath do in his supervisory capacity in response to the text that was sent? The allegation in the complaint is that he failed to discipline or start an investigation. And why isn't that sufficient to state a claim at this point that he failed to do anything in response to the offensive text, which created a hostile work environment? Well, the allegation of hostile work environment requires, for individual liability, it requires personal conduct by Sergeant Heath that was unwelcomed by the plaintiff's appellees and was based on race. The district court correctly found that there's no other allegation in the complaint that supports an inference that it was racially discriminatory other than the offensive text message, which was not sent by Sergeant Heath. Aren't there allegations that the black officers were excluded from meetings where work assignments and overtime were discussed? Yes. The allegation in the complaint is that they were excluded or not affirmatively invited to participate in certain meetings, informal meetings and chats based on their race, is the allegation in the complaint. And the district court correctly found that those allegations were conclusory and insufficient to support the appellees' claims for racial discrimination in counts one, two and four of the amended. We're talking about count five.  That's the only count on the field, right? Yes. Only the hostile work environment claims. The 1981 case. Correct. Against Sergeant Heath and Corporal Oros and against the Maryland State Police under Title VII. Those are the only claims that remain. There's been no discovery here. Correct. Up here on the 12B6. I mean, it was a 12B6 issue.  And qualified immunity was denied. Yes. So the next move would be discovery. That's right. If the case went forward. That's right. Goes forward. And as a public official, Sergeant Heath is immune from the burdens of discovery and litigation if his conduct did not violate clearly established rights of which a reasonable officer would have known. So under the facts of this case, accepting the well-pled allegations as true as we must at this stage, Sergeant Heath is entitled to qualified immunity because the appellees have failed to plausibly allege that Sergeant Heath's conduct violated their constitutional right not to be subjected to a hostile work environment. And Judge Russell didn't buy into that. Judge Russell said that the appellees had narrowly stated a hostile work environment claim based on the single text message sent by Corporal Oros, which was, according to the complaint, an isolated incident. And the judge noted that he was. An isolated incident, though, in the context of the black officers not being invited to any of the work meetings and also not being included on the text chain where all these other officers communicated about work and other things, apparently.  But those allegations, there's nothing to support the allegation that they were excluded based on their race. Counsel, you said it was isolated. It gives context to it. Those allegations that they were excluded from places, these were not just locker room discussions. It alleged that these are discussions that are new to the benefits of overtime pay and assignments. And by the time they got wind of it, all the assignments were gone. So that gives context because you opened the door and you said, well, this instance with the text is just isolated. But it's not on an island alone. It's surrounded by these allegations at this point, as Judge King was saying. That's the stage we are now. So I'm not going to say it's not fair to say that's isolated. Wouldn't you agree? Yes, I wouldn't agree. You would not agree? My use of the word isolated, I was referring to what Judge Russell said, that that was the only time it happened in the complaint. He said it was an isolated incident. I was referring to the text message. I agree with what Your Honor said about the context. So the text message was an isolated incident. The context about the exclusion, it fails to have any facts to show that they were excluded based on race. And as the Court knows, a hostile work environment requires conduct that's based on race. And an allegation that something is simply based on race without any supporting facts. But that's where we are right now. We're in the allegation stage. And next step, as Judge King said, is discovery. Yes. But to simply say that this was based on race is not a well-plaid allegation. And this Court and the lower court were not obligated to accept that as true, even at this motion to dismiss stage. We can't look at the text here and what the text was and see that it was based on race? The text, the racially offensive text message? What was the text? It was a Corporal Oro sent a meme, a text message, that was a picture of an individual. And the individual, what was his name? I believe his name is Barry Wood. He was superimposed on a picture of George Floyd. George Floyd, and this was during the George Floyd incident in Minnesota. Correct. And George Floyd was a black man. Yes. Who had been killed by the police. Yes. And what else did it depict? It depicted him superimposed sitting on his face behind a Minneapolis police car. And there's no dispute. And it depicted a lot more than that. You're not describing it. The gentleman that was superimposed on him was nude and had enlarged genitals and was, well, he was nude and he was also a black man. And there's no dispute that that is. You described it a little better now. Thank you. There's no dispute that that's a racially offensive text message. However, that text message. So you acknowledge that part? Yes. It was a racially offensive text message. Absolutely.  Do you concede that it was severe? In the context of a hostile work environment claim, it could, for purposes of a motion to dismiss, the courts have said that there are rare instances where a single event can be sufficiently severe to state a claim for a hostile work environment. And that's what I ask you. Do you concede that this was a severely hostile, crass-type depiction? An African-American man sitting on top of someone, George Floyd's images around the country. It created an incredible amount of emotion and those kind of things. And you don't concede that that was severe? And then the stereotypical enlarged genitals of a black man nude on that? As to Corporal Oros? Yes, it could be severe. And it certainly can state a claim as to Corporal Oros, who sent the text. So you concede, you say yes to Judge Gregory's question? As to Corporal Oros, not as to Sergeant Heath. And what was it, again, that Sergeant Heath allegedly did in response to this severe, racially offensive text message sent by someone he supervised? He did nothing.  However, there is no allegation that he supervised this individual. Was he the supervisor of the task force? The complaint alleges they are both supervisors and they both did the same thing. So why isn't a complaint that alleges somebody is a supervisor, that alleges a racially offensive and severely so text by one of the task force members, and that alleges that in response that supervisor did nothing, why isn't that sufficient to allege a hostile work environment? Because liability under 1981 requires you to look at the officer's individual conduct. What he specifically did and whether his-  Yes. There's an allegation he did not discipline, and there's allegation that generally he and Oros excluded the appellees from meetings, but those allegations are not well pled and don't support an inference that that was racially discriminatory conduct. But I guess that's what I'm asking you. Why not? Why isn't that sufficient? Why aren't they well pled? Because it's insufficient to simply say, based on race, we were denied opportunities. But that's not what they- That's not all that the complaint alleges. To go back to context. As to the exclusion, isolating to look at the conduct of Sergeant Heath, the allegation is he excluded the appellees from group texts or informal meetings based on their race, and there are no supporting facts to show that it was based on race or any other number of things. So the conduct of Sergeant Heath is limited to that, and this is a claim for a hostile work environment. To state a claim as to Sergeant Heath, they must show unwelcome conduct based on race that was committed by Sergeant Heath. This is a 1981 claim, and it requires intentional discrimination. Do you think that picture in the text was welcome conduct? No. And if Corporal Oros- Do you think it was intentional to stoke racial stereotypes or to demean someone? Do you think that was intentional? I can't speak to Corporal Oros' intention. No, we need to speak to that because you're asking us to dismiss this case without any kind of discovery at a 12B6 stage. I'm asking you, do you think it was intentionally intended to degrade, to humiliate by sending that? I'm asking you because that's what your argument was. Do you think that was intentional? Do you think it was accidental that it was nude or that the genitals were enlarged and he was standing on George Floyd's head? Do you think that was intentional? I believe Corporal Oros sent the text intentionally. Go ahead. I believe there's certainly an inference that he sent the text intentionally. Intentionally to do what? Well, it's an offensive text message. I can't speak to his intentions. Intentionally send the text message? He's not my client. To intimidate on a base of race? He was certainly racially, being racially insensitive and offensive in sending that text. He was hostile? But he is not my client. And he is not here asserting qualified immunity. But you're the one answering our questions. That's what we're, you're the one, you wanted to throw the case out without discovery. You want to win. And Judge Russell wouldn't let you win and so you came up here. And so now you're going to have to tell us why you need to win. I'm not asking you to throw the entire case out, just the case against Sergeant Heath. We're only here, you're only here on count five, 1981. And you say it's a hostile work environment claim. So you have to prove to us or establish to us or convince us that it doesn't measure up as that kind of a claim. And that your client is entitled to qualified immunity in these circumstances, as alleged and taken in the light most favorable to the other side. Have I misstated any of the legal principles? No, Your Honor, but the analysis. So you've got an uphill battle with this appeal. Do you recognize that? When you're coming up here appealing a situation like this, and this text is, you admit it's hostile. You admit it's racially based. Yes, but Sergeant Heath did not send it and there's no allegation he participated. And you're saying your client didn't send it. He didn't do anything about it and he was the boss man. That's also not alleged in the complaint. The allegation is that he and Oros were equals, they were supervisors. What's the word supervisor mean? He was the task force supervisor. Correct, and supervisory liability under these statutes looks at the acts of a subordinate. I think supervisor means the boss. Maybe I'm old-fashioned. I see that my time is up. And you'll say some rebuttal time and I've taken some of your time too, but anyway. Thank you. Thank you very much for your work. Mr. Spicer. Good morning, Your Honor. Good to have you with us, Mr. Spicer. It's nice to be here. May it please the Court, Ms. Patterson spent a lot of time talking about the text message, but this text message did not occur in a vacuum. Plaintiff's amended complaint from plaintiff's perspective, police perspective, is that it was a well-pled complaint. It is not a bare-bones complaint. Within the four corners of the document, the complaint establishes that Sergeant Heath was not a peripheral actor. He was the boss. He was the supervisor of Don Gordon and Terrell Jones, who were his subordinates and who are African-American task force members. The complaint establishes that Sergeant Heath was their supervisor, that he oversaw their day-to-day operations, that he controlled their work schedules. He controls when they worked, how they worked, the kind of work they did. Furthermore, the complaint... Is there any allegation that he controlled Oro's or were they even? They weren't even, Your Honor, because he's a sergeant and Oro's is a corporal. And that's alleged in the complaint, correct? And that is alleged in the complaint as well, that... So Sergeant Heath outranked... Correct. The corporal. Correct. He outranked Corporal Oro's and that Sergeant Heath had meetings. He held those meetings. They were informal meetings. Similarly situated white task force officers attended those meetings. Sergeant Heath also had, as alleged in the complaint, text message threads that invited white task force members. They were similarly situated in every which way. Same task force, same supervisors, same overall types of duties. But in those informal meetings and in those text message threads, that's where the better jobs were being divvied out or provided. And those text messages omitted your client's name? Correct. They were omitted. It's alleged in the complaint. They were excluded. Right. So opposing counsel argued that there aren't any supporting facts to show that this was based on race. But it sounds like all of these things that you're talking about now that were alleged in the complaint are the supporting facts, at least at this stage, to show that it was based on race. Is that correct? Yes, Your Honor. It was... All of this occurred before the text message thread. So it's a pattern of conduct. As I was saying before, the text message thread did not occur in a vacuum. Sergeant Heathworth had those meetings as did Corporal Oros, had the informal meetings, had the text message threads that did not include Gordon and Jones. Before this incident of June 2nd, 2020, when Corporal Oros sent the racially insensitive text message. So Gordon and Jones went through all this, the exclusion from the informal meetings, the exclusion from the text message threads, seeing that the white task force officers, similarly situated as them, same task force, same types of duties and responsibilities, same supervisors. They were getting the overtime. They were getting the better investigations. Meanwhile, they were just sitting there watching. Furthermore, as alleged in the complaint, Gordon and Jones rarely had any communications with both Heath or Oros. That's alleged in the complaint as well. Rarely communicated. So, Your Honor, before June 2nd, 2020, all of this occurred. And then, additionally, on June 2nd, 2020, this text message thread comes out. So, from the, in the light most favorable to the plaintiff. When was the George Floyd incident in Minnesota? I can't remember, Your Honor, but it was 2020. So, it was not long, it was not long after the Floyd incident that this text message came out. And that's why it hit hard during this time period. So, it was a pattern of conduct. It's not just one. Well, it would hit hard during any time period. Yes. Particularly so at that time period. Absolutely. Absolutely. So, it was a pattern of racial discrimination alleged in plaintiff's complaint. And the text message thread just put a cap on that. But opposing counsel argues that since count five is the only count left as to her client, and that's the hostile work environment claim, that we should only be looking at the text alone. That's the way I heard her argument. That might not be what she meant, but without all of this other context, and that the district court sort of blessed that view. What's your response? Your Honor, that is not how I see that the district court solved the complaint and sees count five as the only substantial piece of evidence related to count five. The court looks at the four corners of the complaint. That is what they do. And that is how this court will look at it as well. They look at the four corners of the amended complaint and then make a determination in terms of whether all the elements are met with respect to section 1981 and the hostile work environment claim. If the court would like for me to go through the elements, I can go through the elements of a hostile work environment. Clearly the conduct of Sergeant Heath in excluding Gordon and Jones from it. It's not a Title VII case. Correct. It is not a Title VII. It's 1981 case. That is correct. 1981 comes from the Civil Rights Act of 1866. Yes. Yes. And it also has an employment element in terms of discrimination with respect to contracts. The courts have found that with respect to 1981, employment is a contractual basis and is included in 42 U.S.C. 1981. And with respect to 42 U.S.C. 1981, Gordon and Jones are a member of a protected class in that they are African Americans. And so with respect to 42 U.S.C. 1981, I can go through that as well. Bear with me for one second, Your Honor. So in terms of the elements of 1981, Gordon and Jones are African Americans and are members of a racial minority and are members of a protected class with respect to 1981. In terms of showing that there was intentional discrimination, in looking at the complaint, we see a pattern of racial discrimination and racial exclusion from Sergeant Heath in that he intentionally excluded them. He could have invited them to the meetings that he held, the informal meetings that he held. He could have invited them into the text message chain. He could have included them in his decisions to hand out assignments in terms of handing out overtime work. He chose not to do that. And with respect to the text message of June 2, 2020, I think it also provides more evidence of his intention to discriminate against Gordon and Jones in that he did nothing with respect to a clearly racial discriminatory, racial insensitive text that was sent out by Corporal Oros. He did nothing. He did zero. And it can be argued that as a result of the pattern of conduct, the reason Oros decided to send out this racially insensitive text message is because of what went on before. That he felt that he could. That he felt that nothing would be done. And he was right. And he was right. So there is intentional discrimination with respect to the second element of Section 1981. And with respect to the third element, the discrimination concerned one or more rights protected by this section. And one of them, as I mentioned, is employment. The enforcement of contracts also includes employment. And clearly there is a pattern of racial discrimination and racial exclusion with respect to the conduct of Sergeant Heath. And it was a pattern. Not a one-time thing, as Sergeant Heath claims. And that injury was suffered as the last element as a result of this. It created a racially tense, racially divisive environment for Gordon and Jones. And it also affected their employment. They were not provided the jobs, the investigations, the overtime to make the compensation that other similarly situated white officers were allowed to. Now, if this case is allowed to go forward, plaintiff would be seeking discovery along these lines. But at this stage, Your Honors, in the light most favorable to the plaintiff, based on the four corners of the document, the amended complaint, plaintiff has pled a well-pleaded complaint and has established all of these Section 1981, all the elements required to establish a 1981 claim, and also has established and met all the elements required to meet or to establish a hostile work environment at this stage of the litigation. And at this point, if the Court has any questions, I'll be more than happy to answer them. I can go into, since we're talking about qualified immunity, I can go into the rights that were violated in terms of the first prong of qualified immunity. I can also go into that law was clearly established with respect to qualified immunity in that I think it's pretty clear when we're dealing with racial discrimination claims such as this that we're not looking at a police officer. We're looking at Heath as a government official. That is what he is. And qualified immunity applies to government officials. And with respect to a government official, I think the law was pretty clear in terms of, first, the statutory and constitutional rights that were violated by Heath with respect to Gordon and Jones. When we're looking at the 14th Amendment Equal Protection Clause, we're looking at case law in which state actors, such as government officials, violate laws, especially with respect to racial discrimination. There's a long line of cases that deal with that. You can go back to Strouder v. West Virginia. You can go to Loving v. Virginia. Granted, they don't deal with text messages, but they deal with Equal Protection Clause claims in which government officials, state actors, violate individuals' rights with respect to racial discrimination claims. And there are many others. And with respect to the second prong, clearly established law, racial discrimination claims and with respect to government actors, it is just so obvious that Heath was put on notice that racial discrimination is wrong and that there are constitutional and statutory provisions in place, well established, decades, decades ago, that it is wrong for a government official to violate someone's constitutional rights by racially excluding them and racially discriminating against them. Again, Equal Protection Clause of the 14th Amendment deals with the states. Equal Protection Clause of the 5th Amendment deals with the federal government. We're talking about Title VII. Even though this isn't a Title VII claim, this would have or should have put Sergeant Heath on notice that it is wrong to racially exclude individuals and racially discriminate against them. Any reasonable officer, any reasonable government official would have or should have known that. And the law on this issue is beyond debate. It is not something that can be debated. That it is wrong, it's a statutory violation and a constitutional violation to discriminate against someone based on their race. And as this court knows, you don't need to find a case on point. There doesn't have to be a case on all fours with respect to this particular case. In this case, it is obvious, it is obvious, the law is clear with respect to racial discrimination cases that a government official, a state actor, is not permitted to racially discriminate against a subordinate employee. And with everything that I've just said, Your Honors, in the light most favorable to the plaintiff at this stage, based on the four corners of the complaint, Don Gordon and Terrell Jones are asking you to deny Sergeant Heath's appeal based on qualified immunity. I will end there unless the court has any questions. Thank you very much, Mr. Spicer. Thank you very much. Good to have you with us. Nice to be here. Ms. Patterson? Thank you. Your Honors, in this case, this hostile work environment claim is asserted against the employer, the Maryland State Police, and two supervisors, Sergeant Heath and Corporal Oros. In determining whether qualified immunity applies, the court has to look at whether the allegations in the complaint establish that Sergeant Heath, through his own individual actions, violated the constitutional rights of the plaintiffs. And the only allegations of conduct by Sergeant Heath are not based on race. They allege he was one of the supervisors who excluded the appellees from meetings. And simply to say that it was based on race is not sufficient. There has to be an allegation of fact to show discriminatory intent and purpose by Sergeant Heath. Like what? Like Heath says, let's exclude them because they're black? Well... Why isn't it enough to allege that they were excluded from the meetings with the white officers and they are black? The people that were excluded were black. We cannot make an inference that that was based on race at this stage? When there's no direct evidence, the law requires that it be... Well, there's no evidence at all in this case. Correct. We've got a complaint. We've got a complaint. Yes. Does the complaint allege enough? That's the question. So in this instance, the plaintiffs have to demonstrate... They want to get to the evidence. That would happen if we don't recognize your claim of qualified immunity. And the case goes forward like any other case in the court system. At the pleading stage to show... And you'll have discovery and you'll have summary judgment motions and things like a lot of other motions. And then the court will decide whether there's enough evidence to go to trial. And if the court lets it go to trial, then you have a jury. And either one of you might win. And then the loser at the jury trial can appeal it up here. And we can take another look at it. We're at the very beginning of this piece of litigation. And we have to look at it in the light most favorable to the other five from you. And look at this complaint and what it says. And take what it says as being true. The allegations are true. Taken as true for the purposes of this. But only the well-pled allegations need to be taken as true. And the racial discrimination claims were dismissed and rejected by Judge Russell. You've explained to us what that text was all about. I mean, that blows us away almost. But Sergeant Heath is entitled to qualified immunity unless his conduct violated the constitutional rights. There is no factual assertion such as a demonstration of similarly situated employees, which is typically how one pleads racial discrimination. Judge Russell noted that they simply state that similarly situated employees were included in the meetings without any facts to demonstrate that. And those are the type of conclusory statements that do not have to be taken as true. You disagree about the emails that excluded them at this point? Are you disputing that? I dispute that the allegations in the complaint are similar. No, no, no. You go to the macro when the question is silly. Micro. Do you dispute that their names were left off the email tree to come to the meeting to discuss things, including overtime? Do you dispute that as a fact? At this stage, we have to take that allegation as true. Okay. Okay. All right. But for... But you said they don't properly allege facts. That's what you said. Because there's no constitutional right to be included in meetings. The constitutional right at issue is not to be racially discriminated against. Okay. Counsel, let me ask you a question. This is clearly a hypothetical. Suppose a female is working in a crew of 10 people, and this is a hypothetical. It's not this case. This is not counterfactual. This is a hypothetical. And all of the meetings are in the men's bathroom where they divvy out overtime assignments. And all that she could plead was, you know, I never get to go to the meetings because they're in the men's bathroom. That wouldn't be sufficient, would it? That is a great example of the type of factual assertions that can support a claim of discrimination. That's fine, isn't it? That's fine, isn't it? Because it's specific. No, wait a minute. You said my hypothetical was okay, right? Yes, those are facts. Okay. Because you can see that isn't the men's bathroom the counterpart to this real case of the invite? You can't go to the meeting that you're not invited to just like she couldn't go to the meeting because she's a woman in the bathroom. It's the same parallel difference, isn't it? In terms of what he could plead. Holding it in the men's bathroom supports an inference that women are excluded. But in this case, there's no facts like that. They're just simplistic. Well, not inviting black people doesn't do the same thing? That's not what the complaint says, Your Honor. The complaint says they were not included and the meetings included white members. And doesn't it also say that they're black? It doesn't say that the meetings didn't include any black members. It just says it didn't include them. It also doesn't say that it included all task force members. It's a subtle, I think there must be a reason it was pled that way. But there are no facts to support. For example, if the complaint did allege no black task force members were included in this. But this complaint, it's a fine point. But it specifically alleges we weren't included in meetings that included white task force members. It doesn't say all the white members. It doesn't say and none of the black members. There are no facts. And simply stating based on race doesn't allow you to get past a 12B6 motion. Because there have to be factual allegations or else anybody could just add that into a complaint. And there's no constitutional right to be included in everything. But there is a constitutional right to not be racially discriminated against or discriminated against based on your gender or disabilities. And those require a showing that that is in fact what motivated the exclusion. And here we don't have that. And that's exactly why Judge Russell said that the racial discrimination claims have to be dismissed. Judge Russell said what? That the racial discrimination claims would not go forward. And he dismissed them for failure to state a claim. And those aren't before us. This is the count five, 1981. Right. One count. And Sergeant Heath's conduct as alleged in the complaint. The well-pled allegations are that he excluded these two task force members from meetings and some group texts. And that's it. There's no allegation that he sent a racially offensive text message. There's no allegation. And that he failed to do anything in response to the racially offensive text message. Correct. And that would still require a showing that his purpose and intent. Do you know what that red light means? Yes. It's been on for a long time. It means that your time's up. And we've given you extra time. And if you've got another sentence you want to relate, sum it up, you can do that. I believe I've lost my train of thought. But I appreciate your indulgence in allowing me to go over my time. Thank you for your work. And Mr. Spicer, we thank you. We'll take the case under advisement. And we will also at this time come down and recounsel. And we'll take a brief break after that. And then we'll come back and hear our last case.
judges: Robert B. King, Roger L. Gregory, Stephanie D. Thacker